**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**


**LAKISHA ROCHELLE GRIFFIN**                                          **PLAINTIFF**

**V.**                                          **NO. 4:14-CV-00132-DMB-JMV**

**HSBC MORTGAGE SERVICES, INC.,**
**HSBC FINANCE CORPORATION,**
**AMERICAN SECURITY INSURANCE,**
**CO., ASSURANT, INC., LSI REAL**
**ESTATE TAX,  CORELOGIC SERVICES,**
**CORESTAR FINANCIAL GROUP, LLC,**
**MORTGAGE ELECTRONIC**
**REGISTRATION SYSTEMS, INC.,**
**MERSCORP HOLDINGS, INC., JOHN**
**DOES AFFILIATES FOR CORESTAR**
**FINANCIAL GROUP 1-5, JOHN DOES**
**INSURANCE DEFENDANTS 6-10, FEES**
**AND CHARGES DEFENDANTS 16-20,**
**HSBC JOHN DOES 21-25, OTHER JOHN**
**DOES 26-30, CALIBER HOME LOANS,**
**INC., AMERIPRISE INSURANCE**
**COMPANY, IDS PROPERTY CASUALTY**
**INSURANCE COMPANY, TRUCK**
**INSURANCE EXCHANGE, AND JOHN**
**DOES SERVICES**                                          **DEFENDANTS**


## ORDER ON MOTIONS TO DISMISS

This multi-count action arises from a dispute concerning the servicing of a debt

consolidation loan.  Plaintiff Lakisha Rochelle Griffin contends that her loan originator and

servicer, along with their agents, assigns and successors, and various insurance companies,

mishandled her loan payments in breach of the deed of trust and in violation of state and federal

laws.  Defendants CoreLogic Services ("CoreLogic"); Caliber Home Loans, Inc. ("Caliber");

Mortgage Electronic Registration Systems, Inc., and Merscorp. Holdings, Inc. (collectively, "MERS"); HSBC Mortgage Services, Inc., and HSBC Finance Corporation (collectively, "HSBC"); and American Security Insurance Company ("ASIC"); have moved to dismiss Griffin's Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docs. #77, #88, #90, #114, #116.

# I
## Relevant Allegations

In early 2006, Griffin sought out a debt consolidation loan that would cover the debt on her home, property taxes, hazard insurance, and flood insurance, with one predictable monthly payment to a single entity. Griffin secured such a loan, and executed a promissory note and deed of trust using her home as collateral. The deed of trust identifies Corestar Financial Group, LLC ("Corestar"), as "Lender," and Mortgage Electronic Systems, Inc., as the "nominee for Lender and Lender's successors and assigns."[1] Doc. #32-1 at ¶¶ (C), (E). The deed of trust created various obligations between Corestar and Griffin concerning the payment of taxes and procurement of insurance. Griffin alleges that through assignment, agency, and other legal devices, Corestar passed along its obligations to the other defendants named in this action. Griffin alleges that all defendants wholly failed to carry out their obligations and, as a result, she was harmed.

Griffin originally filed this suit in the Circuit Court of Washington County, Mississippi, on July 31, 2014. HSBC Finance Corporation removed the action to this federal court,[2] with the

---

[1] The deed of trust is included in the record before the Court. Doc. #32-1; Doc. #90-1. The Court considers the deed of trust in evaluating the 12(b)(6) motions to dismiss because it is "referred to in [Griffin's] complaint and [is] central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (quotation marks and citation omitted).

[2] The case was removed based on the assertion of "original jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1332 (diversity)." Doc. #1.

consent or joinder of the other defendants.

In her Third Amended Complaint ("Complaint"), Griffin alleges twelve causes of action: (1) breach of contract and of the implied covenant of good faith and fair dealing (Count I); (2) breach of contract (Count II); (3) breach of escrow fiduciary duties (Count III); (4) fraud or misrepresentation (Count IV); (5) violation of the Real Estate Settlement Procedures Act (Count V); (6) violation of Mississippi consumer protection statutes (Count VI); (7) civil conspiracy regarding insurance (Count VII); (8) breach of the implied covenant of good faith and fair dealing (Count VIII); (9) accounting (Count XI); (10) reformation (Count X); (11) declaratory judgment (Count XI); and (12) unjust enrichment (Count XII).

## II
## Standard of Review

After a defendant removes an action from state court, federal courts must apply the Federal Rules of Civil Procedure when analyzing a motion to dismiss.[3] Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *see* Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 81 (2015) ("Defendants sometimes remove a case from a state with pleading standards that are different from those applicable in federal court. Whether more strict or more lenient, the federal standard will control post-removal.").

---

[3] In each of her responses, Griffin concedes that the federal pleading standard applies to the federal claim alleged in Count V. Doc. #85 at 3. However, Griffin argues that "[b]ecause this Court sits in diversity in this case," it must apply "Mississippi State pleading standards" to her claims brought under Mississippi law. *Id*. (citations omitted). Griffin is incorrect in two respects. First, this suit was removed to federal court based on federal question jurisdiction as well as diversity jurisdiction, which Griffin has not challenged. Second, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Pleading standards are procedural in nature. *See Wigginton v. Bank of New York Mellon*, 488 F. App'x 868, 870 (5th Cir. 2012) (rejecting appellant's argument "that the district court erred by analyzing her complaint under the Federal Rules of Civil Procedure, rather than the less-demanding [state] pleading standards" and noting that there is "no right in federal court to retain more lenient state court procedural rules.").

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885 (5th Cir. 2003)). When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint along with any documents attached to the complaint, or documents attached to the motion to dismiss, if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citation omitted); *see Collins*, 224 F.3d at 499.

To defeat a 12(b)(6) motion, "[a plaintiff's] complaint therefore must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (internal quotation marks and citations omitted). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quotation marks and citation omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570).

**III**
**Discussion**

**A**
**Shotgun Pleading Argument**

CoreLogic, HSBC, and ASIC argue that Griffin's Complaint should be dismissed as a shotgun pleading.[4]  Doc. #78 at 4–5; Doc. #115 at 5–7; Doc. #117 at 3–5.

Each of the defendants in this case is alleged to have participated in either the creation or handling of Griffin's loan.  The Complaint makes plain that Griffin has been unable to discern the true role each defendant played in the management of her loan.  In this regard, Griffin has essentially alleged that each defendant participated in the misconduct described in the Complaint.  Although the Court does not wish to encourage pleading of the sort employed by Griffin, it is not the Court's place to dictate her theories of liability—at least not at this early juncture.  When evidence is placed before the Court, it may be appropriate to narrow the focus of the case.  At this point, though, the Court declines to dismiss the instant Complaint as a shotgun pleading.

**B**
**Count I:  Breach of Contract & Covenant of Good Faith and Fair Dealing**

Griffin contends that "at the time of the February 23, 2006 closing, Corestar, HSBC, and/or their agents (collectively "Lender") agreed with Ms. Griffin that the Loan would provide for an escrow account for payment of hazard and flood insurance and taxes, and escrow services performed by the Lender …."  Doc. #73 at ¶ 95.  Griffin alleges that "Lender," as that term is described in Count I, breached this agreement by "preparing and delivering erroneous closing documents inconsistent and contradictory to the actual terms to which the parties agreed."  *Id.* at

---

[4] The Court dismissed Griffin's Second Amended Complaint as a shotgun complaint.  Doc. #72.

¶ 96.  She also alleges that Lender's conduct "with regard to the closing documents" constitutes a "breach [of] the covenant of good faith and fair dealing implied into all contracts."[5]  *Id.* at ¶ 100.  In other words, Count I does not allege a breach of the loan documents prepared and executed on February 23, 2006.  Rather, it alleges a breach of an agreement that was purportedly reached before the loan documents were prepared.[6]

Only HSBC moves to dismiss this claim.[7]  HSBC makes two arguments in favor of dismissal.  First, HSBC takes exception to Griffin's use of "Lender" in Count I, arguing that the deed of trust identifies only Corestar as "the Lender."  *See* Doc. #115 at 7 ("[T]his Count relates to alleged defects and deficiencies in the origination, or closing, of the Loan.  As noted above, the subject Deed of Trust … makes it clear Corestar was the Lender on this Loan.").  HSBC next argues that "the subject Loan, … was closed on February 23, 2006," and Griffin's claim filed some four years later is barred by the relevant three-year statute of limitations.  *Id.* at 7–8.

### 1.  Contractual Terms

Griffin argues that she has sufficiently alleged HSBC's relationship to Corestar and HSBC's role in the negotiation and execution of the loan.  Specifically, Griffin contends:

> Count I is valid, however, because the Complaint alleges that Corestar assigned the Loan to HSBC "prior to or contemporaneous with closing" (¶ 7; 31); HSBC "worked in concert with Corestar and its agents at all times relevant to the

---

[5] As to this count, Griffin seeks "damages for these breaches of contract, and of the implied covenant, … against HSBC and Corestar and any other defendant who is proved to have acted as their agent in breaching the Loan contract as described in this cause of action."  Doc. #73 at ¶ 101.

[6] Griffin has not specified whether this earlier agreement was in writing.

[7] In its motion to dismiss, ASIC states:

> It does not appear that Count I (TAC ¶¶ 94-101), concerning alleged breach of contract and the duty of good faith and fair dealing, is directed against ASIC, although in ¶ 94 it incorporates by reference all other allegations of the TAC.  Even if it were directed against ASIC, Count I would be subject to dismissal for the same reasons Count II should be dismissed.

Doc. #117 at 6 n.4.  The Court does not consider this argument at this time because Count II concerns breach of the deed of trust, whereas Count I, as alleged, seems to relate to some other agreement.

origination" and was "behind the actions and omissions described" in the Complaint (¶¶ 3-4; 27-28); and, HSBC knew about, approved, participated in and benefitted from the "boiler-room" tactics, false promises and fraudulent documents (¶¶ 24-29) used to induce Ms. Griffin to enter into the Loan, which it then breached. (¶ 32)

Doc. #122 at 13–14 (emphasis omitted).

Accepting the allegations in the Complaint as true, the Court finds that Griffin has sufficiently alleged HSBC's involvement with the February 23, 2006, loan. Specifically, she has alleged that Corestar assigned HSBC the loan prior to or contemporaneous with closing the loan. Thus, HSBC's first argument fails.

### 2. Statute of Limitations

Regarding HSBC's limitations argument, Griffin first argues that HSBC's acts of fraudulent concealment tolled the three-year statute of limitations, rendering her claims timely. *See* Doc. #122 at 14 ("HSBC fraudulently concealed its involvement and all of its wrongdoing, including the breaches complained of in [Count I]"). She next argues that the statute of limitations has not begun to run because a component of the contract remains to be fulfilled. Griffin explains this position as follows:

HSBC's performance of the escrow duties which it fraudulently promised without intending to perform (establishing an escrow account; determining, collecting and applying proper amounts for taxes and insurance; renewing Ms. Griffin's chosen insurance policies; responding to her written inquiries; and other duties) was to occur continuously and repeatedly over the life of the loan. HSBC's performance is a component of contract which remained unfulfilled, but largely fulfillable, each month, from 2006 until it assigned the Loan to Caliber in 2013. (¶¶ 10; 24-29; 32; 45; 47; 52; 57; and 59-101) "Because a component of the contract remains to be fulfilled, the statute of limitations **has not begun to run**." *Bailey v. Estate of Kemp*, 955 So. 2d 777, 785 (Miss. 2007) (emphasis added).

*Id*. The Court is not persuaded by Griffin's arguments.

When a defendant asserts a statute of limitations defense, a court may grant a motion to dismiss under Rule 12(b)(6) if: (1) it is evident from the plaintiff's pleadings that the action is

time-barred; and (2) the pleadings fail to raise some basis for tolling. *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citation omitted).

"Causes of action for breach of contract are subject to the three-year statute of limitations set forth in Mississippi Code Annotated section 15–1–49, which provides: All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." *Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1106 (Miss. Ct. App. 2014) (internal quotation marks omitted). "In the case of a breach of contract, the cause of action accrues at the time of the breach." *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991) (alterations and citation omitted); *Bailey v. Estate of Kemp*, 955 So. 2d 777, 785 (Miss. 2007) ("the statute of limitations begins to run as soon as there is a cause of action") (citation omitted). However, the statute of limitations may be tolled under Miss. Code Ann. § 15–1–67, which provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

"Section 15–1–67 requires proof that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." *Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1104 (Miss. 2011) (internal quotation marks and citation omitted).

As mentioned above, Count I does not allege a breach of the loan documents prepared on February 23, 2006; it alleges the breach of an agreement reached *before* the loan documents were prepared and executed. Griffin alleges that Corestar, HSBC, and/or their agents breached such agreement by "preparing and delivering erroneous closing documents inconsistent and contradictory to the actual terms to which the parties agreed." *Id.* at ¶ 96. The "erroneous

closing documents" were delivered and executed on February 23, 2006, meaning the breach alleged occurred that day at that point. Thus, Griffin's cause of action accrued on February 23, 2006.[8] *See Young*, 592 So. 2d at 107 ("the cause of action accrues at the time of the breach") (citation omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.) ("[T]he inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim.").

Based on Griffin's allegations, tolling is unavailable. As for the first prong to establish tolling based on fraudulent concealment, Griffin's complaint fails to allege any affirmative act on the part of HSBC to conceal the terms of the loan documents executed on February 23 or any subsequent affirmative act to conceal the claims alleged in Count I. *See, e.g., Martin v. First Family Fin. Servs., Inc.*, No. CIV.A.4:02CV315-P-B, 2006 WL 521452, at *4 (N.D. Miss. Mar. 2, 2006) ("Mississippi law provides that a party is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.") (internal quotations marks and citation omitted). As for the second prong, the Complaint does not allege that Griffin "acted with due diligence" to discover her claim "but was unable to do so." To the contrary, Griffin alleges that although she was aware that "a new material term" was included in the loan

---

[8] Griffin cites *Bailey* for the proposition that the statute of limitations has not begun to run because a component of the contract remains to be fulfilled. *See* Doc. #122 at 14. Griffin's reliance on *Bailey* is misplaced. In *Bailey*, the court considered a contract for professional services. Among its many provisions, the contract specified that upon the sale of a certain piece of property, the sale proceeds were to be divided among the contracting parties. 955 So. 2d at 785. The *Bailey* court found that the breach of contract claim, which concerned proceeds from the sale of the property, did not begin to accrue until the property was sold. *Id.* ("All of these conditions occurred save one: the Florida property was never sold. Because a component of the contract remains to be fulfilled, the statute of limitations has not begun to run. In contracts, "[t]he general rule is that the statute of limitations begins to run as soon as there is a cause of action." *Old Ladies Home Ass'n v. Hall*, 212 Miss. 67, 80, 52 So.2d 650, 655 (1951). Had Bailey sold the property years ago and refused Moses and Kemp their one-third shares, we would have a different issue."). Because the cause of action here accrued on February 23, 2006, the statute of limitations began to run that date.

documents, she executed them anyway "because time was of the essence and she needed the funds." Doc. #73 at ¶ 97. Additionally, by Griffin's own admission, she noticed other errors but executed the documents nevertheless. *Id*. at ¶ 29. Because Griffin has not alleged any facts supporting tolling, the three-year statute of limitations was not tolled. *See O'Bannon v. Guardian Life Ins. Co. of Am.*, 331 F. Supp. 2d 476, 478 (S.D. Miss. 2004) (tolling inapplicable where "[n]one of the Plaintiffs' allegations aver that the Defendants affirmatively prevented the Plaintiffs from discovering their claims"); *see also Tanner v. Pfizer, Inc.*, No. 1:15CV75-HSO-JCG, 2015 WL 6133207, at *3 (S.D. Miss. Oct. 19, 2015) (dismissing claim because plaintiff did not allege "a subsequent affirmative act of fraudulent concealment by Defendant").

The Court finds therefore that the statute of limitations began to run on February 23, 2006, and expired three years later, rendering Griffin's 2014 action untimely as to Count I. Because Griffin's Count I breach of contract claim is time-barred, her Count I breach of duty of good faith and fair dealing claim is also time-barred. *See Cirino v. Bank of Am., N.A.*, No. 1:14CV240-HSO-RHW, 2015 WL 5752105, at *5 (S.D. Miss. Aug. 26, 2015) ("With respect to Plaintiff's remaining claims for … breach of contract, and breach of the covenant of good faith and fair dealing, the record supports a finding that these claims are also time-barred.").

For the reasons above, Count I will be dismissed as to HSBC.

## C
### Count II:  Breach of Contract (Deed of Trust)

Griffin complains that Corestar, HSBC, ASIC, MERS, Caliber and all Doe defendants breached the Deed of trust "by repeatedly failing to provide … escrow services" promised in the contract. Doc. #73 at ¶¶ 102–111. Caliber, MERS, HSBC, and ASIC have moved to dismiss this claim. The Court will address each party's arguments in turn.

### 1. Caliber

Caliber contends that Griffin "does not allege she had a contract with Caliber; instead, she alleges Caliber became the servicer of her loan in August 2013." Doc. #89 at 2. Based on this contention, Caliber argues that "[a] loan servicer does not owe contractual duties to a borrower," and therefore, Griffin "has no breach of contract claim against Caliber." *Id.* (citing *Perron v. JP Morgan Chase Bank, N.A.*, No. 1:12–cv–01853, 2014 WL 931897 at *4 (S.D. Ind. Mar. 10, 2014); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013); *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1174 (E.D. Cal. 2010)).

Griffin responds that the authority Caliber offers in support of "its contention that a loan servicer owes no contractual duties to a borrower [is] inapposite" because the cited cases "do not apply Mississippi contract law." Doc. #97 at 5. Griffin also argues that she is "a third party beneficiary of the assignment of servicer duties from HSBC to Caliber." *Id.* at 6.

In reply, Caliber reasserts its out-of-state authority and argues that Griffin "has not provided any Mississippi cases that say servicers *do have* contractual duties to borrowers." Doc. #107 at 3 (emphasis in original). As for Griffin's argument that she is a third-party beneficiary of an agreement between Caliber and HSBC, Caliber argues that this argument "does not appear in her Complaint." *Id.*

Caliber's assertion that Griffin failed to allege the existence of a contract with Caliber is inaccurate. The deed of trust does identify Corestar as "Lender." Doc. #32-1 at ¶ (C). But, the deed of trust also provides that "[t]he covenants and agreements of this Security Instrument shall bind … and benefit the successors and assigns of Lender." *Id.* at ¶ 13. Griffin's Complaint clearly alleges that HSBC is an assign of Corestar, Doc. #73 at ¶ 31; and that Caliber "is a successor Lender or Servicer" of HSBC, *id.* at ¶ 10. These allegations, in conjunction with the

deed of trust, amount to a plausible claim for breach of contract against Caliber.  *See Grinstead v. Bank of Am., N.A.*, No. 3:15-CV-89-SA-SAA, 2015 WL 5644391, at *3 (N.D. Miss. Sept. 24, 2015) ("Viewing the pleadings in a light most favorable to the plaintiff, the allegations in Count II could be fairly construed as a plausible allegation that Bank of New York Mellon, as successor in interest to the Deed of Trust, breached the contract.  The Court finds that Grinstead has alleged a plausible claim for breach of contract.").

As argued by Griffin, Caliber has not adequately supported its argument that a loan servicer does not owe a borrower any duties.  A 12(b)(6) movant carries the burden "to prove an absence of a claim."  *Mello v. Sara Lee Corp.*, 292 F. Supp. 2d 902, 904 (N.D. Miss. 2003).  Thus, the movant must provide relevant authority that demonstrates its entitlement to relief.  Caliber's reliance on out-of-state authority, which is not binding on the Court, does little to demonstrate that Griffin has failed to state a claim in this respect.

For these reasons, Caliber's motion to dismiss will be denied as to this claim.

## 2.  MERS

MERS contends that Count II should be dismissed because it is not a party to the deed of trust.  *See* Doc. #91 at 3 (arguing "MERS is not and was not the 'lender'" and "MERSCORP Holdings, Inc. does not appear anywhere on the Deed of Trust, so there is no basis for any contractual claim against this entity").  MERS also argues that its designation as nominee does not create any contractual duties with Griffin.  *Id.* (citing *Depauw v. Liquidation Properties, Inc.*, No. CIV. 09-14543, 2010 WL 5825515, at *2 (E.D. Mich. Sept. 27, 2010)).

In response, Griffin argues that MERS Systems is a party to the contract by virtue of its status "as nominee, agent and beneficiary for Lender," and it is otherwise a proper party under Rule 17(a) of the Federal Rules of Civil Procedure.  Doc. #99 at 4–7.  Griffin does not dispute

that MERS Holdings is not named in the contract.  Instead, she contends that she pleaded that MERS Holdings "wrongfully benefitted from other defendants' actions and that it may also have committed wrongdoing, but that these facts have been concealed."[9]  *Id*. at 7.

In order to establish a breach of contract claim, a plaintiff must prove:  "(1) the existence of a valid and binding contract between it and [defendant], (2) that [defendant] breached the contract to which it was a party, and (3) that [plaintiff] was damaged monetarily."  *United Plumbing & Heating Co. v. AmSouth Bank*, 30 So. 3d 343, 347 (Miss. Ct. App. 2009) (citation omitted).  "[I]n order to maintain an action to enforce a breach of contract or to recover damages growing out of a breach, a relationship of privity of contract must exist between the party damaged and the party sought to be held liable for the breach."  *Saucier v. Coldwell Banker JME Realty*, 644 F. Supp. 2d 769, 780 (S.D. Miss. 2007) (citing *Allgood v. Bradford*, 473 So.2d 402, 415 (Miss. 1985)) (internal quotation marks omitted).  "[W]ithout any privity of contract with [the breaching defendant], the plaintiff[] cannot establish a claim for breach of contract."  *United Plumbing*, 30 So. 3d at 347.

The Court begins with the terms of the deed of trust and the Complaint.[10]  The deed of trust was executed between Corestar, the "Lender," and Griffin, the "Borrower."  Doc. #90-1 at ¶¶ (B), (C).  The deed of trust goes on to provide that "[t]he covenants and agreements of this Security Instrument shall bind … and benefit the successors and assigns of Lender."  *Id*. at ¶ 13. Thus, the contracting parties are Griffin, Corestar, and arguably Corestar's successors and

---

[9] Griffin also confusingly argues that MERS owed a duty of care that did not arise under the deed of trust.  Doc. #99 at 11.  This argument is irrelevant to the Court's breach of contract inquiry.

[10] To the extent Griffin's "arguments in response to the [m]otions to [d]ismiss … are not contained in the … pleading," the arguments "cannot be considered in determining whether [Griffin has] stated a claim." *Garnica v. Argent Mortgage Co., LLC*, No. 4:13-CV-2331, 2014 WL 1338703, at *9 (S.D. Tex. Mar. 27, 2014) (citation omitted).  Additionally, to the extent that the deed of trust conflicts with the Complaint, the deed of trust controls. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440–41 (5th Cir. 2015) ("[C]ontracts and medical records attached to a complaint … generally trump contradictory allegations in the complaint.") (citations omitted).

assigns. Unlike the allegations against Caliber, Griffin does not allege that MERS is a successor or assign of Lender.[11] Instead, the factual allegations related to MERS identify it as nominee, beneficiary, and agent of Lender. Doc. #73 at ¶¶ 8, 34, 36. Because MERS is not a party to the deed of trust, this breach of contract claim must be dismissed as to MERS. *See Hammonds v. Lennep*, No. CIV.A 109CV642LGRHW, 2009 WL 3418546, at *2 (S.D. Miss. Oct. 20, 2009) (dismissing breach of contract claim where "there is no evidence … that [defendant] was a party to [contract]"); *Elam v. Pharmedium Healthcare Corp.*, No. CIV.A.2:07CV212-P-A, 2008 WL 1818436, at *2 (N.D. Miss. Apr. 18, 2008) (dismissing breach of contract claim where defendant not party to contract).

To be clear, Griffin's argument concerning MERS' status as nominee or agent of Lender does not change this outcome. The deed of trust specifically names MERS Systems, a non-contracting party, as "nominee for Lender and Lender's successors and assigns" and "the beneficiary under [the deed of trust]." Doc. #90-1 at ¶ (E). As nominee, MERS Systems:

> holds only legal title to the interest granted by [Griffin] in the [deed of trust],but if necessary MERS [Systems] (as nominee for Lender and Lender's successors and assigns) *has the right*: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this [deed of trust].

*Id.* at 3 (emphasis added).[12] In this regard, the status of nominee under the deed of trust is substantially similar to the traditional role of agent; that is, one authorized to act on behalf of a principal.[13] Importantly, Griffin does not allege that MERS executed a contract with her while

---

[11] In Count III of the complaint, Griffin identifies MERS as a successor of Lender. Doc. #73 at ¶ 114. However, she offers no facts in support of this assertion. Accordingly, given the language of the deed of trust, the Court does not accept this conclusory allegation as fact for purposes of evaluating Griffin's Count II claim against MERS.

[12] Griffin seems to misunderstand the import of this provision. This provision outlines the scope of MERS Systems' authority to act on Lender's behalf. It does not otherwise impose any duty flowing from MERS to Griffin.

[13] "Agent" is defined as:

acting on behalf of Lender. Rather, she merely alleges that while exercising its rights as nominee, beneficiary, or agent of Lender, MERS breached the deed of trust. In other words, if this claim relies on MERS' status as nominee or agent, it is merely a "suit … for damages because of a breach of contract by a master through its servant." *Chipman v. Lollar*, 304 F. Supp. 440, 445 (N.D. Miss. 1969). An agent is not liable for such breaches. *See Breazeale v. Young*, No. 4:13-CV-00119-SA, 2013 WL 5592361, at *2 (N.D. Miss. Oct. 10, 2013) ("Mississippi law is well settled that an authorized agent acting on behalf of a disclosed principal is not personally liable for a breach of duty or contract by the principal.") (collecting cases).

MERS' alleged status as beneficiary also does not affect the outcome. As a non-contracting party, MERS, at best, may qualify as a third-party beneficiary of the deed of trust. *See Marlar v. Ne. Miss. Planning & Dev., Dist.*, Inc., No. 1:11CV191-SA-DAS, 2012 WL 5904035, at *2 (N.D. Miss. Nov. 26, 2012) ("[T]o be a third party beneficiary under a contract, the contract between the original parties must have been entered into for the benefit of the third party, or at least such benefit must be the direct result of the performance with the contemplation of the parties as shown by its terms.") (alterations and citation omitted). However, third-party beneficiary status does not expose a non-contracting party to liability under a contract; rather, it provides a means for the "third party [to] maintain an action … to enforce a promise made for his benefit." *Id.* (citation omitted).

---

A person authorized by another (principal) to act for or in place of him; one entrusted with another's business.... A business representative, whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between principal and third persons.... One who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons. One authorized to transact all business of principal....

*State v. Brooks*, 781 So. 2d 929, 933-34 (Miss. Ct. App. 2001) (alterations in original) (collecting authorities).

Lastly, Griffin's argument that MERS is a real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure is unpersuasive. *See* 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1542 (3d ed.) ("As used in Rule 17(a), the real-party-in-interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether plaintiff has a significant interest in the particular action plaintiff has instituted, and Rule 17(a) is limited to plaintiffs.") (footnotes omitted).

For these reasons, Count II will be dismissed as to MERS.

### 3. ASIC

ASIC also contends that Count II should be dismissed because it is not a party to the deed of trust. *See* Doc. #117 at 6 (arguing claim "against ASIC … fails as a matter of law because ASIC is not a party to, and cannot be held liable for a breach of, the Deed of Trust").

Griffin responds that "ASIC is alleged to have acted as the agent of the lender, when it took actions which breached the escrow and insurance terms of the Deed of Trust and the actual agreement." Doc. #124 at 10. Based on this agency allegation, Griffin argues that "it is not necessary for the agent to be an actual party or signatory to the contract." *Id*.

As explained above, Griffin, Corestar, and arguably Corestar's successors and assigns, are parties to the deed of trust. Like MERS, the factual allegations concerning ASIC identify it as Lender's agent. Doc. #73 at ¶¶ 4, 35–36. Importantly, Griffin does not allege that ASIC executed a contract with her while acting on behalf of Lender. Again, Griffin merely alleges that while acting as agent of Lender, ASIC breached the deed of trust. In other words, Griffin seeks "damages because of a breach of contract by a master through its servant." *Chipman*, 304 F. Supp. at 445. But, as articulated above, an agent is not liable for such breaches. *See Breazeale*,

2013 WL 5592361, at *2 ("an authorized agent acting on behalf of a disclosed principal is not personally liable for a breach of duty or contract by the principal") (collecting cases).

For this reason, Count II will be dismissed as to ASIC.

#### 4. HSBC

HSBC argues that dismissal is warranted because Griffin's loan "was not originated as a non-escrow loan." Doc. #115 at 8. In support of this argument, HSBC attaches the "First Payment Letter," which was allegedly included among Griffin's closing documents. *Id.* at 8–9; Doc. #114-1. Because the "First Payment Letter" is not referenced within Griffin's Complaint, the Court will not consider it at this time. *See Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 794 (E.D. Tex. 2013) ("The court may also consider documents attached to a motion to dismiss if *they are referred to in the complaint* and are central to the plaintiff's claim.") (collecting cases) (emphasis added).

For this reason, HSBC's 12(b)(6) motion to dismiss will be denied as to Count II.

### D
### Count III: Breach of Fiduciary Duty

MERS, HSBC, and ASIC all move to dismiss Griffin's breach of fiduciary duty claim, arguing that the deed of trust did not create a fiduciary relationship between them and Griffin. Doc. #91 at 4 ("MERS does not have a fiduciary duty to a borrower like Plaintiff"); Doc. #115 at 10 ("[t]here is no presumption of a fiduciary relationship … [with] HSBC … and Plaintiff has failed to allege facts to overcome the clear case law"); Doc. #117 at 7 ("Plaintiff does not, and cannot, make any plausible allegation that any 'escrow relationship' exists between ASIC").

The Mississippi Supreme Court has held:

A fiduciary duty must exist before a breach of the duty can occur. "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies

upon another. A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed.

*Callicutt v. Prof'l Servs. of Potts Camp, Inc.*, 974 So. 2d 216, 222 (Miss. 2007) (punctuation and citations omitted). Every contractual relationship does not create a fiduciary relationship, but a contract may create a fiduciary relationship under the following circumstances:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities are for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Robley v. Blue Cross/Blue Shield*, 935 So. 2d 990, 994–95 (Miss. 2006) (punctuation and citations omitted). A contract does not create a fiduciary relationship unless the "contract relationship creates a justifiable special trust and confidence in the parties so that the first party relaxes the care and vigilance normally exercised in entering into a transaction with a stranger." *Id.* at 995.

Griffin alleges that Corestar, HSBC, ASIC, MERS, LSI Real Estate Tax ("LSI"), IDS Property Casualty Insurance Company ("IDS"),[14] and all Doe defendants owe her fiduciary duties pursuant to the escrow terms contained in the deed of trust.[15] Doc. #73 at ¶¶ 112–16. In pertinent part, the deed of trust provides:

> **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the property, if any; (c) premiums for any and all insurance required by Lender under

---

[14] IDS, along with Ameriprise Insurance Company and Truck Insurance Exchange, were dismissed through joint motion based on a settlement on March 14, 2016. Doc. #157. LSI does not appear to have ever been served.

[15] In the body of the Complaint, Griffin clarifies that "the Deed of Trust provided specific terms of the escrow agreement." Doc. #73 at ¶ 24.

Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."

Doc. #32-1 at ¶ 3. Griffin specifically claims that fiduciary duties arising under (a) and (c) were breached by Corestar, HSBC, ASIC, MERS, LSI, IDS, and all Doe defendants. *See* Doc. #73 at ¶ 115 ("Corestar and its agents agreed to provide escrow services covering property taxes, flood insurance, and hazard insurance").

The language of the deed of trust does not establish that Griffin's relationship with "Lender" (or any party alleged to be deemed as such) was fiduciary in nature. Lender had nothing to gain from the success or failure of Griffin, as the deed of trust fixes the contractual terms, including Griffin's duty to pay Lender certain funds constituting Escrow Items. Doc. #32-1 at ¶ 3. The deed of trust does not contain any language expressly acknowledging that either party occupies a position of trust and confidence or agrees to act in accordance with fiduciary standards. Indeed, with respect to the payment of escrow services covering property taxes, flood insurance, and hazard insurance, the deed of trust includes language indicating Lender's intent to act in its own best interest. For example, the deed of trust clearly states that Lender's handling of taxes and assessments is for the purpose of protecting against a third-party obtaining priority over its interest in the collateral property. *Id.* at ¶ 3 ("which can attain priority over this Security Instrument as a lien or encumbrance on the Property"). Similarly, as explained in Section 5 of the deed of trust, which is referenced in subsection (c) of paragraph 3, "*Borrower shall keep …* the Property insured against loss by fire, hazards … including, earthquakes and floods …." *Id.* at ¶ 5 (emphasis added). And, in the event that Borrower failed to maintain the necessary insurance, Lender retains the right to "obtain insurance coverage, at Lender's option and Borrower's expense" and "such coverage shall cover Lender, but might or might not protect

Borrower, Borrower's equity in the Property, or the Contents of the Property, against any risk, hazard or liability …." *Id.* In other words, the deed of trust's repeated assertion that Lender acts for its own interests "clearly prevented any fiduciary expectations on [Griffin's] part." *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1206 (Miss. 2001) (quoting *General Motors Acceptance Corp. v. Baymon*, 732 So.2d 262, 270 (Miss. 1999)). Moreover, the deed of trust does not indicate that Lender exercised dominion and control over Griffin.

In sum, Lender's duty to accept payments from Griffin, including payments directed towards Escrow Items, was on its own behalf—to fulfill its obligations under the deed of trust. And, Griffin's obligation to make payments was for her own benefit—to fulfill her obligations under the deed of trust. In this regard, Griffin's factual allegations are based on an arms-length commercial transaction between Lender and Griffin, which does not create a fiduciary relationship.[16] *See Wells*, 819 So. 2d at 1205 ("a fiduciary relationship between a lender and a borrower does not arise when the lender breaches the lending contract"); *Robley*, 935 So.2d at 995 ("Although one does not typically enter into a contract with another person unless he or she has a degree of trust or confidence in that person, without more, such a transaction amounts to merely a business relationship and not a fiduciary relationship."). *See also BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11-CV-136-KS-MTP, 2012 WL 642304, at *4 (S.D. Miss. Feb. 27, 2012) (collecting cases). Consequently, the Court finds that no fiduciary relationship exists between Griffin and HSBC, the alleged assign of Lender.

---

[16] This case is distinguishable from *American Bankers' Insurance Company of Florida v. Alexander*, 818 So. 2d 1073 (Miss. 2001), upon which Griffin heavily relies in two of her response memoranda. Doc. #122 at 16–17; Doc. #124 at 11–12. In *Alexander*, the court considered whether a breach of fiduciary duty was sufficiently pleaded to qualify as an exception to the filed-rate doctrine. *See* 818 So. 2d at 1085. In answering this question, the *Alexander* court did not consider the provision of the contract at issue. Unlike the *Alexander* court, this Court considers the deed of trust along with the complaint. For this reason, *Alexander* is inapposite.

Similarly, in the absence of a fiduciary relationship between Griffin and Lender (and its successor and assigns), Griffin's breach of fiduciary duty claim against the non-contracting parties MERS and ASIC also fails. *See Wells*, 819 So. 2d at 1206 ("There is even less reason to conclude that American Bankers might owe a fiduciary duty to Fidelity's borrowers. American Bankers had no contractual relationship with Fidelity's borrowers ….").

For these reasons, the motions of HSBC, MERS, and ASIC to dismiss Count III will be granted.

## E
## Count IV: Fraud and Misrepresentation

Griffin alleges that Corestar, HSBC, ASIC, LSI, CoreLogic, and all Doe defendants engaged in fraud.[17] As grounds for dismissal, CoreLogic and ASIC assert that Griffin has failed to plead her fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b). Doc. #78 at 5–6; Doc. #117 at 7. Specifically, CoreLogic and ASIC both argue that Griffin has not alleged any specific fraudulent statements or omissions made by them to Griffin. *Id*.

The Federal Rules require that allegations of fraud be pled with particularity. Fed. R. Civ. P. 9(b). *See Truddle v. Wyeth, LLC*, No. 2:11-CV-00207-GHD, 2012 WL 3338715, at *2 (N.D. Miss. Aug. 14, 2012) ("fraud and misrepresentation claims are subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure"). "What constitutes particularity will necessarily differ with the facts of each case. At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put

---

[17] "The elements of a fraudulent or intentional misrepresentation are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Poppelreiter v. GMAC Mortgage, LLC*, No. 1:11CV008-A-S, 2011 WL 2690165, at *4 (N.D. Miss. July 11, 2011) (citation omitted).

simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal punctuation, quotation marks, and citations omitted).

Here, Griffin alleges specific misrepresentations that "the loan originator, a Corestar agent,"[18] made during the loan origination process.[19]  Doc. #73 at ¶ 118.  She also alleges specific misrepresentations that "HSBC and its agents" made in certain mailed statements and phone calls regarding force placed insurance.[20]  *Id.* at ¶¶ 121–22.  And, throughout the Complaint, Griffin alleges that CoreLogic and ASIC are agents of HSBC.

In considering the misrepresentations allegedly made by HSBC and its agents, and Griffin's allegation concerning CoreLogic and ASIC's status as agents of HSBC, the Court concludes that Griffin has sufficiently pled her claim of fraud and misrepresentation with sufficient particularity to defeat a motion to dismiss.[21]

---

[18] This agent is sometimes referred to as "she," which indicates that Griffin is referring to a specific person.  *See, e.g.*, Doc. #73 at ¶ 117 ("She knew Ms. Griffin was relying upon her representations concerning the terms and features of the loan.").

[19] Griffin alleges that "[d]uring the application process for this loan around February of 2006, the loan originator, a Corestar agent repeatedly represented to Ms. Griffin that this loan would include escrow provisions for hazard and flood insurance and taxes ….  She knew or should have known that the closing packet would be presented to Ms. Griffin in a last minute, coercive, all or nothing manner, and she or another Corestar agent would threaten Ms. Griffin by stating that unless she signed and returned every document in the package without any alteration, the loan would either not be funded or funding would be delayed."  *Id.* at ¶ 118.

[20] Griffin alleges that "[o]n numerous occasions, including but not limited to approximate dates of May 5, 2010, April 27, 2013, and August 19, 2013, Ms. Griffin or her attorney called HSBC questioning notices or statements referring to force-placed insurance, and HSBC's agents variously falsely represented that HSBC and its agents:"

    a. had not charged her account for force-placed insurance;
    b. had not force-placed insurance on her property;
    c. any charges for force-placed insurance were mistakes and had been corrected;
    d. did not know she had insurance in place; and that they,
    e. were not trying to hold her liable for and were not asserting that she owed any amounts for force-placed insurance.

*Id.* at ¶ 121.

[21] This finding has nothing to do with the merits of Griffin's claims.  Indeed, discovery may prove that these claims are not supported by sufficient facts to continue in this case and could be subject to dismissal at a later stage.  The

**F**

**Count V: Violation of RESPA and Consumer Lending Laws**

Griffin alleges that Corestar, HSBC, ASIC, LSI, CoreLogic, MERS, and all Doe defendants violated the Real Estate Settlement Practices Act ("RESPA") based on their handling and management of her loan. Doc. #73 at ¶¶ 127–44. CoreLogic, MERS, and ASIC have moved to dismiss this claim. The Court will address each party's arguments in turn.

**1. CoreLogic**

CoreLogic makes two arguments for dismissal. It argues that Griffin has not adequately identified the laws it claims the defendants violated. Doc. #78 at 6. It also contends that a claim brought under RESPA is only available against a loan lender or servicer, and Griffin has not alleged that CoreLogic is a lender or servicer of her loan. *Id*. at 7–8.

Griffin responds that the Complaint plainly alleges that CoreLogic violated RESPA. Doc. #85 at 21–22. Regarding CoreLogic's status as a loan servicer, Griffin argues that the Complaint also alleges that as a successor of Corestar, HSBC accepted duties of "Lender and Loan Servicer" and "HSBC delegated and CoreLogic assumed these duties." *Id*. at 22. In reply, CoreLogic contends that it is not a servicer of Griffin's loan. Doc. #93 at 4.

The Court concludes that CoreLogic's arguments are not well taken at this time. The Complaint clearly identifies RESPA as that allegedly violated, and alleges that CoreLogic accepted statutory and contractual duties from HSBC. This is sufficient at this point to survive a motion to dismiss.[22]

---

Court simply concludes that, at this point, Griffin has sufficiently pled her claims to now defeat dismissal and should be allowed to proceed with discovery.

[22] CoreLogic's argument concerning its true relationship to Griffin's loan is better considered in the context of summary judgment.

## 2. MERS

MERS contends that dismissal is required for two reasons.  First, MERS argues that a claim brought under RESPA is only available against a loan servicer and it is not a loan servicer. Doc. #91 at 5.  Similar to her allegations against CoreLogic, Griffin has alleged that "MERS … assumed the Lender's or Servicer's statutory and contractual duties …."  Doc. #73 at ¶ 34.  This allegation is sufficient to overcome MERS' argument at this time.

MERS also argues that in light of *Twombly* and *Iqbal*, Griffin's claim must fail because it is pleaded "on information and belief."  Doc. #91 at 5–6.  However, "[a]lthough there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (3d ed.) (footnotes omitted).  *See Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-CV-90-TJW, 2011 WL 1004873, at *4 (E.D. Tex. Mar. 18, 2011) ("[I]nformation and belief pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant.") (quotation marks and citation omitted). Throughout her Complaint, Griffin makes clear that the true relationship between the various defendants is being concealed.  Given that this information is more accessible to MERS, the Court finds that Griffin's information and belief pleading is sufficient to withstand MERS' instant challenge.

## 3. ASIC

ASIC first argues that "ASIC is not a loan servicer involved with 'servicing' plaintiff's mortgage loan within the meaning of the statute, and the [complaint] contains no allegations to suggest such a role."  Doc. #117 at 8.  This is incorrect.

The statute provides:

The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts …, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). Among other allegations, Griffin alleges:

HSBC delegated, and ASIC, Insurance Does, LSI, Corelogic, the HSBC Does, Fee Does and/or Other Does assumed the Lender's or Servicer's statutory and contractual duties to properly and timely collect and pay Ms. Griffin's property taxes and other non-insurance escrow items; and it/they assumed the duties to respond to hers and her attorney's multiple telephone inquiries and qualified written requests related to these escrow items; and they assumed the duties to discover and correct related errors, pursuant to 12 U.S.C.A. § 2605 and the terms of the Loan.

Doc. #73 at ¶ 37. These allegations are sufficient to withstand ASIC's argument.[23]

ASIC next argues that "[t]o the extent plaintiff's claim is premised on alleged violations of RESPA that occurred more than three years before this action was commenced on April 25, 2014, it is barred by the [three-year] statute of limitations. Doc. #117 at 8 n.9. Griffin responds that her many allegations of fraudulent concealment provide sufficient reason to toll the statute of limitations, and "[w]hether equitable tolling applies … should not be decided on a 12(b)(6) motion. Doc. #124 at 31. The Court finds Griffin's argument persuasive.

The Complaint alleges facts, which accepted as true, may well justify the application of equitable tolling to this particular claim. If ASIC would like to contest those facts, it should not do so through a 12(b)(6) motion. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) ("Whether the sins of a lender may be used to extend the period available to sue … is a question that eventually may require resolution, but it is too soon to tackle the issue. All

---

[23] To the extent ASIC attempts to dispute its alleged role as Servicer or Lender, or its specific duties with respect to Griffin's loan relative to this claim, a motion for summary judgment is the more appropriate vehicle for such a challenge.

we have to go on is the Complaint, and because the period of limitations is an affirmative

defense it is rarely a good reason to dismiss under Rule 12(b)(6).").

Lastly, ASIC contends that Griffin's claim under 12 U.S.C § 2605(k)(1)(A) of RESPA,

which relates to ASIC procuring Lender Placed Insurance ("LPI") between 2006 and 2012, must

be dismissed because that provision of the statute did not become effective until January 10,

2014. Doc. #117 at 8 n.9. Griffin has not responded to this argument. In her Complaint, Griffin

identifies § 2605(k)(1)(A) in paragraphs 134 and 135. Doc. #73 at ¶¶ 134–35. The allegations

in those paragraphs concern LPI obtained between December 2006 and October 2012. *Id*.

Because "[s]ection 2605(k) took effect on January 10, 2014, and was not in effect when [ASIC]

obtained LPI on Griffin's property in 2006–2012," Griffin's claim against ASIC based on a

violation of § 2605(k) of RESPA must be dismissed.[24] *Gomez v. Nationstar Mortgage, LLC*, No.

1:14-CV-1499-BAM, 2015 WL 966224, at *3 (E.D. Cal. Mar. 4, 2015) (collecting authority).

### G
### Count VI: Mississippi S.A.F.E. Mortgage Act ("SAFE Act")

Griffin alleges that Defendants violated Mississippi's SAFE Act, Miss. Code Ann. § 81–

18–3, *et seq*.[25] Doc. #73 at ¶¶ 145–49. CoreLogic, Caliber, MERS, HSBC, and ASIC all move

to dismiss this claim, arguing that the SAFE Act does not provide a private cause of action. Doc.

#78 at 9; Doc. #89 at 3; Doc. #91 at 5; Doc. #115 at 11; Doc. #117 at 10 n.11.

---

[24] This does not result in the total dismissal of Griffin's RESPA claim against ASIC. Griffin may well have other claims that remain viable under a different subsection or provision of RESPA.

[25] "The SAFE Act regulates the activities of 'mortgage brokers,' 'mortgage lenders,' and 'mortgage loan originators.' *See* Miss. Code Ann. §§ 81–18–3, 81–18–27. Among other things, it provides a licensing process, imposes record-keeping requirements, prohibits certain activities, regulates the fees charged to borrowers, and authorizes the Commissioner of the Mississippi Department of Banking and Consumer Finance ("the Commissioner") to promulgate rules and regulations. Enforcement of the SAFE Act was vested in the Commissioner, through cease-and-desist orders and civil penalties. Miss. Code Ann. § 81–18–39." *Ishee v. Fed. Nat. Mortgage Ass'n*, No. 2:13-CV-234-KS-MTP, 2015 WL 518682, at *17 (S.D. Miss. Feb. 6, 2015) (footnotes omitted).

In *Ishee v. Federal National Mortgage Association*, the Southern District Court of Mississippi considered whether the SAFE act creates a private cause of action. No. 2:13-CV-234-KS-MTP, 2015 WL 518682, at *17 (S.D. Miss. Feb. 6, 2015). The *Ishee* court found that "the Mississippi legislature [did not] intend[] to create an implied private remedy for violations of the SAFE Act."[26] *Id.* Consequently, the *Ishee* court "decline[d] to create a private right of action where none previously existed," granting summary judgment. *Id.* This Court finds *Ishee*'s reasoning persuasive.

For this reason, Count VI will be dismissed as to CoreLogic, Caliber, MERS, HSBC, and ASIC.

## H
## Count VII: Civil Conspiracy

Regarding her conspiracy claim, Griffin alleges that "HSBC entered into one or more undisclosed and concealed agreements with ASIC, one or more of the Insurance Does and/or other Defendants" to handle "all property insurance-related Lender and Servicers duties under the loan …." Doc. #73 at ¶ 151. As a part of the agreement, HSBC allegedly "segregated the insurance monitoring and placement functions from the rest of mortgage servicing so as to distance borrower insurance information possessed by [HSBC] from" the co-conspirators who agreed to monitor the property insurance. *Id.* at ¶ 153. Griffin alleges that the purpose of this arrangement was to ensure that unnecessary LPI was placed on her account, which resulted in maximized profits for all parties to the conspiracy. *Id.* at ¶¶ 150–60.

CoreLogic, HSBC, and ASIC move to dismiss Griffin's conspiracy claim. Doc. #78 at 9–10; Doc. #115 at 11–12; Doc. #117 at 10–12.

---

[26] On appeal, the Fifth Circuit recently "affirm[ed] the grant of summary judgment against Ms. Ishee's SAFE Act claims, since Ms. Ishee d[id] not dispute that the SAFE Act does not create a private cause of action." *See Ishee v. Fed. Nat. Mortgage Ass'n*, No. 15-60129, 2016 U.S. App. LEXIS 4726 (5th Cir. Mar. 14, 2016).

"Under Mississippi law, a conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004) (internal quotation marks, alteration, and citation omitted). "To establish a civil conspiracy in Mississippi, a plaintiff must plead (1) an agreement between two or more persons, (2) an unlawful purpose, (3) an overt act in furtherance of the conspiracy, and (4) resulting damages to the plaintiff." *Kennedy v. Jefferson Cty., Miss. ex rel. Bd. of Sup'rs*, No. 5:13-CV-226-DCB-MTP, 2015 WL 4251070, at *7 (S.D. Miss. July 13, 2015) (citation omitted).

"Still, an agreement between the parties must be established. But it need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct. For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement. And even if there is a clear agreement on the front end, a conspiracy standing alone, without the commission of acts causing damage is not actionable." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (internal quotation marks, alteration, and citations omitted). *See Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011) ("[A] civil conspiracy claim cannot stand alone, but must be based on an underlying tort.") (citations omitted).

CoreLogic argues only that it was "not … alleged to be involved with insurance in connection with [Griffin's] loan." Doc. #78 at 9. CoreLogic is wrong. Griffin alleges that "HSBC delegated, and … Corelogic, … assumed the Lender's or Servicer's statutory and contractual duties to properly and timely collect and pay Ms. Griffin's property taxes *and other non-insurance escrow items*." Doc. #73 at ¶ 37 (emphasis added).

HSBC and ASIC both argue that Griffin has failed to make any allegations concerning an agreement between the parties. Doc. #115 at 12; Doc. #117 at 11–12. In support of this argument, both parties quote extensively from *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11-CV-136-KS-MTP, 2012 WL 642304 (S.D. Miss. Feb. 27, 2012). The Court finds *BC's Heating* unpersuasive. As described above, Griffin has alleged (in ten paragraphs) an agreement between the parties, as well as the purpose of the parties' alleged agreement. This is considerably more than the conclusory statement considered in *BC's Heating*. *See* 2012 WL 642304, at *6 ("Plaintiffs merely alleged that Defendants 'acted in concert with a meeting of the minds.'").

ASIC next argues that Griffin's conspiracy claim should fail because she "fails to identify the alleged tort that underlies her civil conspiracy claims." Doc. #117 at 10. Although Griffin does not identify the tort by name in advancing her conspiracy claim, that section of her Complaint is otherwise composed of alleged facts underlying her misrepresentation and fraud claims.

ASIC also argues that Griffin has not alleged an unlawful act. *Id*. at 11. Specifically, it contends:

> To the extent plaintiff's civil conspiracy claim is premised on an allegation that the placement of insurance on her property was an "unlawful" act, such a claim is barred by her Deed of Trust. The monitoring of plaintiff's compliance with the Deed of Trust's insurance requirements and the placement of LPI when required is expressly permitted by the terms of the Deed of Trust.

*Id*. The Court finds this argument unpersuasive. Griffin does not simply allege that the placement of insurance on her property was an unlawful act. Rather, she alleges that the entire arrangement surrounding the placement of the insurance was unlawful. In other words, Griffin

alleges that the defendants conspired "to accomplish … a lawful purpose unlawfully," which is sufficient under Mississippi law. *Bradley*, 117 So. 3d at 339.

In sum, the Court finds that Griffin's conspiracy allegations are sufficient to withstand the motions to dismiss of CoreLogic, HSBC, and ASIC.

# I
## Count VIII:  Common Law Unfair and Bad Faith Acts

Griffin alleges that her "Loan contract contains an implied covenant of good faith and fair dealing in performance and enforcement, which was breached by the above-described conduct of each Defendant which violates standards of decency, fairness or reasonableness."  Doc. #73 at ¶ 162.  HSBC argues that the claim should be dismissed because

> courts in Mississippi and the Fifth Circuit have rejected claims for breach of the duty of good faith and fair dealing where the claim arises out of ordinary lender/borrower disputes. …   [And t]he relationship between the HSBC Defendants and Plaintiff was nothing more than a routine mortgage servicer/borrower relationship.

Doc. #115 at 14–15 (internal citations and quotation marks omitted).  ASIC argues that the claim should be dismissed because Griffin

> neither identifies nor alleges any facts regarding any contract between plaintiff and ASIC.  In the absence of any specific allegations regarding which, if any, contract gives rise to the purported duty of good faith and fair dealing, this claim fails.

Doc. #117 at 12.

"The duty of good faith and fair dealing is implied in the performance and enforcement of all contracts, but only arises from the existence of a contract between parties."  *Ross v. Citifinancial, Inc.*, No. CIV.A.5:01-CV-185BN, 2002 WL 461567, at *8 (S.D. Miss. Mar. 18, 2002), *aff'd and remanded*, 344 F.3d 458 (5th Cir. 2003) (internal quotation marks and citations omitted).  *See Limbert v. Miss. Univ. for Women Alumnae Ass'n*, 998 So.2d 993, 998 (Miss.

2008) ("All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement.").

HSBC's argument fails because it is predicated on the fact that HSBC and Griffin share a "mortgage servicer/borrower relationship." Griffin has alleged that HSBC is an assign or successor of the original Lender. Because the true nature of HSBC and Griffin's relationship is not certain at this stage in the litigation, the Court will not at this time grant HSBC's motion on this claim.

The Court is also unpersuaded by ASIC's argument at this time. Griffin has alleged the existence of a promissory note, deed of trust, and undisclosed agreements that were allegedly executed among the defendants. The Court has already found that ASIC is not a party to the deed of trust. However, the Court has not seen the promissory note or the undisclosed agreements alleged. It is possible that ASIC may be a party to either of those contracts. To the extent that a contract exists between ASIC and Lender, it is also plausible that Griffin may be a third-party beneficiary to such a contract. An intended third-party beneficiary can sue for a breach of the duty of good faith and fair dealing. *See Radian Asset Assurance Inc. v. Madison Cty., Miss.*, No. 3:13-CV-686-CWR-LRA, 2015 WL 1780190, at *3 (S.D. Miss. Apr. 20, 2015) ("Although privity of contract is usually required to invoke the duty of good faith and fair dealing, this court has previously permitted the intended third-party beneficiaries of a contract to sue for breach of the duty of good faith and fair dealing. This court has also said as much in the insurance context, concluding that an insurance carrier owes a duty under its insurance policy to its insureds and to the intended beneficiaries of the insurance contract.") (internal quotation marks and citations omitted). Given the current posture of this case, the Court will not now grant ASIC's motion.

For the reasons above, the motions of HSBC and ASIC to dismiss Count VIII will be denied.

# J
## Count IX: Accounting

Griffin alleges that a detailed accounting is necessary to determine the current status of her loan account, including how her various payments were allocated to escrow accounts. Doc. #73 at ¶¶ 166–68. Caliber moves to dismiss Griffin's claim for an accounting, arguing that it does not owe any fiduciary duties to Griffin. Doc. #89 at 4. ASIC argues that dismissal is warranted because Griffin "has made no plausible allegation that ASIC, which is an insurer, can provide an accounting of plaintiff's loan account." Doc. #117 at 13.

"There are three factors to consider when deciding whether a court of equity has jurisdiction over matters of account, (1) the need of discovery, (2) the complicated character of the accounts, and (3) the existence of a fiduciary or trust relation." *Re/Max Real Estate Partners, Inc. v. Lindsley*, 840 So. 2d 709, 712 (Miss. 2003) (citing *Henry v. Donovan*, 114 So. 482, 484 (Miss. 1927)).

The Complaint alleges that Caliber is "a successor Lender or Servicer because it accepted assignment of HSBC's Lender's servicing rights and obligations on Ms. Griffin's Loan." Doc. #73 at ¶ 10. In other words, Caliber stands in essentially the same position as HSBC. As explained above in the discussion of Count III, HSBC does not owe any fiduciary duties to Griffin. For the same reasons, Caliber does not owe any fiduciary duties to Griffin. Consequently, the accounting claim fails as to Caliber.

Although ASIC's sole argument does not address the three elements of an accounting claim, the Court nonetheless finds the claim also fails as to ASIC based on the lack of a fiduciary relationship between ASIC and Griffin.

For these reasons, Count IX will be dismissed as to Caliber and ASIC.

## K
## Count XI:  Declaratory Judgment

Griffin seems to seek a declaratory judgement determining the insurance policies that were in effect on the date her home was destroyed by fire.  Doc. #73 at ¶¶ 172–75.  ASIC moves to dismiss this request, arguing that it is not identified in this count and Griffin did "not allege the existence of any ASIC-issued LPI policy covering plaintiff's property on the date of the fire."  Doc. #117 at 14.  The Court finds these arguments unconvincing.  While it is true that Griffin does not identify ASIC in this count, she does throughout the Complaint allege that HSBC charged her for LPI the month before the fire and the month of the fire, and that ASIC is one of the companies that HSBC used to secure LPI.  Doc. #73 at ¶¶ 35, 59.  These allegations are sufficient to bring ASIC within the scope of Griffin's declaratory judgment request.

For this reason, ASIC's motion to dismiss will be denied as to Count XI.

## L
## Count XII:  Unjust Enrichment

CoreLogic argues that dismissal is warranted because Griffin does not allege "that CoreLogic obtained any funds which belonged to [Griffin]."  Doc. #78 at 10.  Caliber, MERS, HSBC, and ASIC all argue that Griffin's unjust enrichment claim should be dismissed because she admits that a contract exists.  Doc. #89 at 4; Doc. #91 at 6; Doc. #115 at 15; Doc. #117 at 15.

"An unjust-enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to equity and good conscience."  *Langham v. Behnen*, 39 So.3d 970, 976 (Miss. Ct. App. 2010) (quoting *1704 21st Ave., Ltd. v. City of Gulfport*, 988 So.2d 412, 416 (Miss. Ct. App. 2008)) (internal quotation marks omitted).  Unjust enrichment applies "where no legal contract exists" and where "the person charged is in

possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Willis v. Rehab Solutions, PLLC*, 82 So.3d 583, 588 (Miss. 2012) (citing *Powell v. Campbell*, 912 So.2d 978, 982 (Miss. 2005)). For a plaintiff to recover under this rule, the party to whom the mistaken payment was made must be left in the same position after refund as he would have been in the absence of the initial payment to him. *Id*.

CoreLogic's argument is based on the mistaken belief that an unjust enrichment claim must fail where the allegedly enriched party did not receive funds directly from the plaintiff. *See* Doc. #93 at 6 ("If no funds were alleged to have been collected from the Plaintiff, how could CoreLogic or any of the other defendants be 'in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain'?"). This argument misses the mark because Mississippi recognizes that in some instances an unjust enrichment claim may be appropriate against a party that did not directly receive funds from the plaintiff. *See Dunn v. Dunn*, 853 So. 2d 1150, 1154 (Miss. 2003) ("Even though the money was not paid directly to Todd, he benefitted from the payment of the money. In equity and good conscience, Todd should have refunded the money to Judy without the necessity of further legal or equitable action."). Griffin has alleged that she paid money to Lender, which was supposed to be applied to certain tax and insurance accounts. She also alleges that Lender farmed out the duty to make such payments and monitor those accounts to other companies, including CoreLogic. Because Griffin alleges that her escrow payments were misapplied and in some instances never applied, it is arguable that CoreLogic may have been unjustly enriched. Consequently, CoreLogic's motion will be denied as to this claim.

As for the arguments of Caliber, MERS, HSBC, and ASIC concerning the existence of a contract, the Court notes that each of these parties have moved to dismiss Griffin's breach of contract claim on the ground that they are not a party to the deed of trust. Meanwhile, Griffin has essentially alleged that by virtue of their relationship to Lender, all of the defendants are parties to the deed of trust. "Federal Rule of Civil Procedure 8(d)(2) allows Plaintiffs to set forth multiple theories of a claim, [thus Griffin is] allowed to plead both breach of contract and … unjust enrichment." *Walker v. Williamson*, No. 1:14CV381-KS-JCG, 2015 WL 5534297, at *11 (S.D. Miss. Sept. 18, 2015). Therefore, at this stage of this action, where the true relationship between the parties is unknown, the Court cannot determine if a contract actually exists between Griffin and the movants such that the unjust enrichment claim should be dismissed.

Caliber and MERS also argue that Griffin's unjust enrichment claim should be dismissed because it is based on information and belief. Doc. #89 at 4–5; Doc. #91 at 6. As detailed above, the Court declines to dismiss Griffin's claim to the extent that only some of the facts are based on "information and belief."

Finally, ASIC argues that this claim should be dismissed because it is conclusory and contains no factual allegations. The Court disagrees. In its facts section, the Complaint contains many factual allegations that could arguably sustain an unjust enrichment claim. In this regard, ASIC's motion is unpersuasive.

For these reasons, the motions to dismiss Count XII of Caliber, MERS, HSBC, and ASIC will be denied.

**IV**
**Conclusion**

For the reasons above:

1.     Corelogic's motion [77] to dismiss is **GRANTED in part and DENIED in part.** It is granted to the extent Count VI is DISMISSED as to CoreLogic but is denied in all other respects.

2.     Caliber's motion [88] to dismiss is **GRANTED in part and DENIED in part.** It is granted to the extent Counts VI and IX are DISMISSED as to Caliber but is denied in all other respects.

3.     MERS' motion [90] to dismiss is **GRANTED in part and DENIED in part**. It is granted to the extent Counts II, III, and VI are DISMISSED as to MERS but is denied in all other respects.

4.     HSBC's motion [114] to dismiss is **GRANTED in part and DENIED in part**. It is granted to the extent Counts I, III and VI are DISMISSED as to HSBC but is denied in all other respects.

5.     ASIC's motion [116] to dismiss is **GRANTED in part and DENIED in part**. It is granted to the extent Counts II, III, VI, and IX are DISMISSED as to ASIC; and Count V, only insofar as Griffin's alleges a claim for violation of 12 U.S.C § 2605(k), is DISMISSED as to ASIC.[27]  ASIC's motion is denied in all other respects.

        **SO ORDERED**, this 18th day of March, 2016.


                                          **/s/ Debra M. Brown**
                                          **UNITED STATES DISTRICT JUDGE**

---

[27] *See* s*upra* note 24.